IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-cv-284-RAH |
| | ) | [WO] |
| KNAUF INSULATION, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

John Ross, a commercial truck driver, was injured while opening the door to his trailer when some of the trailer's contents (insulation) fell on him. The insulation was loaded onto Ross' trailer by employees of Defendant Knauf Insulation, Inc. Ross later sued, bringing claims of negligence and wantonness. Pending before the Court is Knauf's Motion for Summary Judgment, which largely challenges the existence of a duty owed to Ross. Knauf's motion is fully briefed and ripe for decision. The motion will be denied in part and granted in part.

### BACKGROUND

Knauf manufactures and sells insulation. (Doc. 55-2 at 22–23.) Knauf hires motor carriers, one of which is Heartland Express, Inc., to transport its product to Knauf's customers. (Doc. 55-2 at 43–45; Doc. 55-3 at 17–19, Ex. 1.)

In May 2016, Knauf and Heartland entered into a transportation agreement that designated Knauf as the shipper and Heartland as the motor carrier. (*Id.*) Under the agreement, Heartland would hire drivers and provide them with a tractor and trailer to transport Knauf's insulation. (*Id.*)

Of importance here, Heartland has specific policies and instructions regarding its transportation services and how its drivers interact with shippers such as Knauf. For example, Heartland's policies and driver manual prohibit drivers from breaking a sealed trailer without authorization.  (Doc. 57-2 at 3; Doc. 55-3 at 50.)  If authorization is not given, generally a seal can be broken only when the load arrives at its delivery destination and instructions are given to the driver to break the seal. (Doc. 57-2 at 3; Doc. 55-3 at 50–52.)

Ross was a driver for Heartland.  On June 10, 2021, Heartland dispatched Ross to transport a load of insulation from Knauf's facility in Lanett, Alabama to Cameron Ashley Building Products in Cordele, Georgia.  (Doc. 55-1 at 223, 225–26, 228.)  Ross was instructed to bring with him two load-securement straps to the Lanett facility.  (*Id.* at 225, 228.)

When Ross arrived at the Lanett facility, he proceeded to the front office and provided a Knauf employee with his information and his load-securement straps. (*Id.* 224–25.)  Ross, however, was told that his straps were not needed because Knauf had its own straps.  (*Id.*)  Ross then waited while Knauf loaded the trailer. (*Id.*)  Ross did not watch the loading process because Knauf prohibited drivers from being in the loading area.  (Doc. 57-1 at 40.)

The trailer was loaded with 210 individual bags of insulation.  (Doc. 55-2 at 187.)  The insulation bags were packed for delivery into 42 master bags, each weighing between 150 and 300 pounds.  (Doc. 55-1 at 263; Doc. 57-1 at 69.)

The loading was performed solely by Knauf employees.  (Doc. 57-1 at 40.) Once finished, Ross was notified that he could pick up the trailer.  (Doc. 55-1 at 225.)  Because the trailer was sealed, he did not inspect the trailer or its contents to see if it was properly loaded or secured.  (Doc. 55-5 at ¶¶ 3, 6.)  Ross also did not ask to break the seal to inspect the inside of the trailer. (Doc. 57-1 at 40; Doc. 55-5 at ¶¶ 3, 6.)

Ross then drove the load to the delivery destination in Georgia. (Doc. 55-5 at ¶ 3; Doc. 55-1 at 234–35.) There, he was instructed to break the seal and open the trailer. (Doc. 55-1 at 234–35, 240–47; Doc. 55-5 at ¶ 3.) First, Ross opened the right (passenger-side) trailer door and successfully secured it to the side of the trailer. (*Id.*) He looked inside the trailer and noticed that the cargo on both sides was not perfectly flush, but it otherwise appeared stable. (*Id.*) Ross next began to open the left (driver-side) trailer door. (*Id.*) While opening that door, a gust of wind pushed the door from Ross' control, where it swung open. (*Id.*) At that moment, Ross was struck on the back of the head by a 300-lb. master bag of insulation. (*Id.*) Three more 300-lb. master bags then fell from the trailer, striking Ross in the back and lower legs, and causing him to fall to the ground. (*Id.*) Ross claims to have sustained injuries to his ankle, neck, and back because of the falling cargo. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate where the materials in the record show there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its responsibility, the moving party must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quotation marks omitted). This Court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir. 1984).

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to

3

each of its claims for relief exists. *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevent summary judgment, a factual dispute must be both material and genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it has the potential of "affect[ing] the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 248). And to raise a "genuine" dispute of material fact sufficient to preclude summary judgment, "the nonmoving party must point to enough evidence that 'a reasonable juror could return a verdict'" in his favor. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotation marks omitted) (quoting *Furcron*, 843 F.3d at 1303).

The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The "mere existence of a scintilla of evidence in support of the [non-moving party's] position" cannot defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252.

## JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## DISCUSSION

The central issue here is the existence of a duty under Georgia law.[1] Knauf argues that it owed no duty to Ross to secure the load in the trailer while Ross claims that Knauf was negligent and wanton in not properly securing the load.

---

[1] The parties agree that Georgia law applies because the accident causing the injury occurred in Georgia.

Knauf advances two reasons why it owed no duty to secure the load.  First, there was no contractual, regulatory, or statutory duty to secure the load, and second, Georgia does not recognize a general common law duty to keep others safe.  Because Ross concedes that Knauf did not owe a regulatory or statutory duty to secure the load, (*see* doc. 57 at 1), and does not address the contractual duty issue, the Court will address only whether Knauf owed a common law duty under Georgia law and whether Knauf's conduct amounts to wantonness.

### Knauf Owed A Duty Under These Facts

To state a cause of action for negligence in Georgia, there must be (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.  *City of Douglasville v. Queen*, 514 S.E.2d 195, 197 (Ga. 1999) (citing *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982)).  Ross argues a duty exists because of Georgia's adoption of the Restatement (Second) of Torts § 324A as applied under the facts here.

"The existence of a legal duty is a question of law for the court."  *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011) (citing *City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993)).  As to duty in the negligence context, Georgia does not recognize a general common law duty to keep others safe from unreasonable harm.  *Dep't of Lab. v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019) (holding that a general common law duty to keep others safe "has never been endorsed in a decision of this Court that qualifies as precedent").  Even so, Georgia does recognize the Restatement (Second) of Torts § 324A. *See Ga. CVS Pharmacy, LLC v. Carmichael*, 890 S.E.2d 209, 232–34 (Ga. 2023) (recognizing "Section 324A 'as an accurate statement of Georgia's common law'").  Section 324A provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

"Section 324 A [sic] imposes liability only where a party has in fact undertaken to render services. It does not impose liability based upon the failure to render services which should have been undertaken." *Finley v. Lehman*, 463 S.E.2d 709, 710 (Ga. 1995) (citation omitted).

Because of the subject matter of this case, Knauf argues against application of the *Savage* rule, an allocation of responsibility between shippers and carriers for improper loading that has been embraced by several jurisdictions although not explicitly in Georgia.  The *Savage* rule provides:

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. This rule is not only followed in cases arising under the federal statutes by decisions of the federal courts but also for the most part by the decisions of the state courts.

*United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953).

Knauf contends that the *Savage* rule does not apply here.  Ross argues that it should apply even though Georgia courts have not specifically spoken to it.  There is no need to make an *Erie* guess on whether Georgia would fully adopt the *Savage* rule because the specific facts here, when viewed in a light favorable to Ross, sufficiently establish the existence of a duty under the Restatement (Second) of Torts § 324A in ways similar to *Savage*.

6

Ross has presented evidence showing that Knauf exercised exclusive control over the loading and securing process. Knauf loaded the trailer and therefore made the decisions on how to load the trailer and whether and how to secure the load if the load was secured at all. Knauf declined to use Ross' load straps, thereby inferring that it was using its own straps and would be securing the load. Further, pursuant to Knauf's policies at the Lanett facility, Ross could not observe the loading and securing process, as he was required to remain outside the loading area. Nor was he given an opportunity to inspect the load prior to the trailer being sealed by Knauf. All told, these facts also show that it was reasonable for Ross to rely upon Knauf to secure the load. And given that Ross was not permitted to observe the trailer being loaded and was given a sealed trailer, any problems with how the trailer was loaded or secured were concealed (and therefore latent) and not capable of ordinary observation by Ross without taking the affirmative step of breaking the seal and entering the trailer.

Despite these facts, Knauf argues that it did not assume a duty to secure the load because of the following language in its contract with Heartland:

> If [Knauf] loads and seals the lading in or on the trailer . . . . [Heartland] may break the seal on a trailer if, upon [Heartland's] determination or that of its operator or other representative, it becomes reasonably necessary to do so to inspect, reposition, or protect the lading or [Heartland's] equipment or to comply with federal, state, municipal, or provincial laws, rules and regulations.

(Doc. 55-3 at 38, § 8.)

But that language does not sweep to the broad conclusion that Knauf attempts to make. First, that language makes it clear that Knauf may load and seal the trailer. And second, nothing in that language affirmatively and absolutely transfers the duty to secure the load to Heartland or the driver. It simply recognizes that Heartland may break the seal if reasonably necessary to do so. That Heartland may have a

right to break the seal and inspect, reposition and protect the cargo, if reasonably necessary to do so, does not absolve Knauf of any negligence in its own actions, especially in the absence of any evidence that Heartland, and Ross in particular, actually broke the seal, and inspected, repositioned, and/or protected the cargo. And further, evidence has not been presented showing that it was reasonably necessary by Heartland or Ross to break the seal.

Additionally, Knauf argues that the Federal Motor Carrier Safety Regulations ("FMCSR") exclusively impose the duty to secure cargo onto motor carriers and drivers, thus absolving Knauf of any duty or liability for its own actions. While the FMCSR does impose a duty on motor carriers and drivers, nothing in the regulations suggest that it eliminates any common law duties that may arise when a shipper loads and secures a trailer. *See* 49 CFR § 392.9; *see, e.g.*, *Cook v. Publix Supermarkets, Inc.*, No. 19-CV-01087, 2021 WL 2497943, at *3 (N.D. Ala. Apr. 27, 2021) ("[FMCSR] doesn't impose an exclusive duty on anyone. . . . [N]othing in the regulation's text suggests such a duty supersedes or preempts other actors' duties." (emphasis and citation omitted)).

Under Georgia law, control over a task and property can create a duty. *See generally, Martin v. Six Flags Over Ga. II, L.P.*, 801 S.E.2d 24, 34 (Ga. 2017) (discussing that the level of control over premises and the method of work is instructive of whether negligence occurred); *Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 272 (Ga. 2021) (discussing that control over the property and task is key to determining negligence); *Tim's Crane & Rigging, Inc. v. Gibson*, 604 S.E.2d 763, 765 (Ga. 2004) (discussing control as a factor in determining negligence). And here, the facts evidence control by Knauf, whether gratuitously or for consideration, in loading the trailer and securing its cargo. In doing so, it undertook the common law duty contemplated by Section 324A. *See Carmichael*, 890 S.E.2d at 232–34. Knauf

8

certainly could have loaded the trailer and then told Ross to use his straps to secure the contents and then seal the trailer.  But it did not.[2]

One additional point on the existence of a duty here.  Ross has presented evidence showing that, in the years preceding Ross' accident,  Knauf was aware of its load securement issues and was actively reviewing its method of load securement, even to the point of issuing a "Safety Alert" to its customers.  (*See generally* doc. 57-3 (detailing Knauf's internal review and discussions on falling freight).)  Nothing in the record suggests that Heartland was given a copy of the Safety Alert.

Viewing the evidence in a light favorable to Ross, Knauf has not shown its entitlement to summary judgment on the issue of duty.  Accordingly, Knauf's motion on this basis will be denied.

### Ross' Wantonness/Punitive Damages Claim

Knauf also moves for summary judgment on Ross' affirmative claim for wantonness, claiming that Georgia law does not recognize wantonness as an affirmative claim (like Alabama does) nor do the facts, viewed favorably to Ross, show a jury issue as to wanton conduct.

Under Georgia law, wantonness may be considered by a jury in evaluating whether punitive damages are warranted.  *See* Ga. Code § 51-12-5.1(b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.").  "Wanton conduct . . . does not involve an actual intent to harm or inflict injury but is nevertheless described as highly culpable conduct that is equivalent in spirit to actual intent to do harm or inflict injury." *Ford Motor Co. v. Cosper*, 893 S.E.2d 106, 116 (Ga. 2023)

---

[2] Knauf also raises various arguments about Ross' own conduct. These are more appropriate for presentation to the jury under its comparative negligence defense.

(internal quotation marks omitted) (quoting *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 212 (Ga. 1994)).

Knauf is entitled to summary judgment on Ross' wantonness claim because there is insufficient evidence showing highly culpable conduct that is equivalent in spirit to actual intent to do harm or inflict injury. Ross points to the Safety Alert and Knauf's internal audit documents (*see* doc. 57-3) as evidence sufficient to establish a genuine dispute on wanton conduct. That by itself does not sufficiently show that Knauf's failure to secure the cargo in Ross' trailer was so reckless or indifferent that it was equivalent in spirit to actual intent. While the evidence supports that there is a genuine dispute as to negligence, negligence alone, even gross negligence, cannot support punitive damages without a showing of culpable conduct. *Colonial Pipeline Co. v. Brown*, 365 S.E.2d 827, 830 (Ga. 1988) ("Punitive damages cannot be imposed without a finding of some form of culpable conduct. Negligence, even gross negligence, is inadequate to support a punitive damage award."). Thus, Knauf is entitled to summary judgment on this claim, regardless of whether it is considered a standalone claim for wantonness or a claim for punitive damages.

## CONCLUSION

Knauf has not shown its entitlement to summary judgment with respect to the claim of negligence, but it has shown its entitlement to summary judgment on the wantonness claim. Accordingly, it is hereby ORDERED that Knauf's Motion for Summary Judgment (doc. 54) is due to be DENIED IN PART and GRANTED IN PART. This matter will proceed to trial solely on Ross' claim of negligence against Knauf.

**DONE** on this the 9th day of December 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE